NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0329n.06

No. 10-4616

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Mar 26, 2012***

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| KEITH A. LAWHORN, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Keith Lawhorn appeals his conviction, following a jury trial, of one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, we affirm.

I.

On May 27, 2010, detectives from the Akron Police Department ("APD") Narcotics Detail conducted a controlled purchase of heroin from defendant Lawhorn at the residence located at 1040 Hardesty Boulevard in Akron, Ohio. On June 1, 2010, APD officers responded to a domestic disturbance involving Lawhorn at the same address. Later on that same day, the officers sought and executed a search warrant at the residence. The application for the warrant was supported by an affidavit submitted by Detective Brian Callahan, a thirteen-year veteran of the APD.

In his affidavit, Detective Callahan stated that he and other APD officers set up the controlled buy on May 27, 2010. An officer watched as the confidential source, supplied with APD funds, pulled into the driveway at 1040 Hardesty Boulevard. A black male entered the source's car, sat briefly in the passenger seat, and then returned to the residence using the front door. Upon his return, the source turned over to Callahan a quantity of heroin that had been purchased in the driveway transaction. The APD set up additional surveillance on the residence, and at approximately 10:30 a.m., Detective Callahan observed what appeared to be another drug sale in the driveway. A subsequent traffic stop of the vehicle involved in the transaction revealed that the driver was in possession of .4 grams of heroin, which he admitted that he had purchased from a black male named "Mike" at 1040 Hardesty Boulevard. Detective Callahan's affidavit also included as attachments two reports of citizen complaints about drug trafficking at that address.

When the APD executed the search warrant, Lawhorn was present in the home, along with his grandmother. A search of Lawhorn's person revealed $900 in cash and a valid Ohio driver's license, which listed his permanent residence as 1040 Hardesty Boulevard. On the dining room table, officers found a piece of mail addressed to Lawhorn at that address. The officers recovered the following contraband: (1) two boxes of Remington ammunition (.40 caliber and .357 caliber) found in a bedroom; (2) one box of Remington Thunderbolt .22 caliber ammunition found on the entertainment center in the living room; and (3) a loaded .40 caliber, semi-automatic Smith & Wesson pistol found in a shoe box in a trash can located outside between the house and the garage.

On June 15, 2010, Lawhorn was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence found at 1040 Hardesty Boulevard, arguing that the facts alleged in Detective Callahan's affidavit did not provide probable cause for the search. Specifically, Lawhorn contended that the affidavit did not establish a sufficient nexus between drug trafficking and the residence to be searched and that the information was stale. The government opposed the motion, and the district court found no basis for holding an evidentiary hearing and issued an order denying Lawhorn's motion.

The case proceeded to trial, and on September 13, 2010, the jury returned a verdict of guilty. The district court sentenced Lawhorn to seventy-seven months in prison and three years of supervised release. Lawhorn now timely appeals.

II.

Lawhorn first claims that the district court should have held an evidentiary hearing on his motion to suppress the evidence. Lawhorn appeals the lack of a hearing, not the district court's conclusion that there was probable cause to search the residence.

We review the district court's decision not to hold an evidentiary hearing on a motion to suppress for an abuse of discretion. *United States v. Montgomery*, 395 F. App'x 177, 186 (6th Cir. 2010). "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (citation and internal quotation marks omitted). "A defendant is not entitled to an evidentiary

hearing where his arguments are 'entirely legal in nature.'" *United States v. Knowledge*, 418 F. App'x 405, 408 (6th Cir. 2011) (quoting *Abboud*, 438 F.3d at 577). Challenges to the existence of probable cause, including the issue of staleness, are questions of law. *Id*.; *Abboud*, 438 F.3d at 577.

Lawhorn's arguments – that Callahan's affidavit failed to establish a sufficient nexus between the criminal activity and the residence and that the probable cause was stale – contest legal conclusions, not facts, and fall squarely within the type of challenges that can be resolved without an evidentiary hearing. Under these circumstances, we find no abuse of discretion.

III.

Because Lawhorn was charged with being a felon in possession of a firearm, the district court instructed the jury on the meaning of "possession." Over Lawhorn's objection, the court, using Sixth Circuit Pattern Criminal Jury Instruction § 2.10 (2009), defined both actual and constructive possession for the jury, even though Lawhorn argued and the government conceded that the evidence supported only Lawhorn's constructive possession of the firearms and ammunition. In doing so, the district court reasoned that it would "allow the definition of actual possession to simply compare and contrast that with constructive possession." Lawhorn argues that the district court erred in unnecessarily giving the instruction on actual possession.

We review the district court's jury instructions for an abuse of discretion. *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001). "[T]he district court's choice of jury instructions [must be viewed] 'as a whole to determine whether they adequately inform the jury of relevant considerations and provide a sound basis in law to aid the jury in reaching its decision.'" *United*

*States v. Hughes*, 134 F. App'x 72, 76 (6th Cir. 2005) (quoting *United States v. Layne*, 192 F.2d 556,

574 (6th Cir. 1999)).  "It is of course well established that an instruction should not be given if it

lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. James*,

819 F.2d 674, 675 (6th Cir. 1987).  Moreover, "boilerplate instructions should not be used without

careful consideration being given to their applicability to the facts and theories of the specific case

being tried." *Hughes*, 134 F. App'x at 76 (citation and internal quotation marks omitted).

However, "[t]his circuit has set a high standard for reversal of a conviction on the grounds

of improper instructions." *United States v. Sheffey*, 57 F.3d 1419, 1429 (6th Cir. 1995).  Thus, "[a]

reviewing court may reverse a judgment only if the instructions, viewed as a whole, were confusing,

misleading and prejudicial." *Id*. at 1430 (citation and internal quotation marks omitted).

The Use Note accompanying Pattern Criminal Jury Instruction § 2.10 advises that:

> If the government's theory of possession is that it was actual or constructive, give all
> paragraphs of this instruction.  If the government's only theory of possession is that
> it was constructive, modify this instruction to delete references to actual possession.

> If the government's only theory of possession is that it was actual, do not give this
> instruction; instead, give Instruction 2.10A.  This instruction (Instruction 2.10)
> should be given only when there is some evidence of constructive possession.

In numerous felon-in-possession cases involving the converse situation – where the district

court has instructed a jury on both constructive and actual possession, yet the proofs supported only

actual possession – we have found such instructions to be erroneous, but harmless. *See, e.g., United*

*States v. Smith*, 419 F. App'x 619, 620-21 (6th Cir. 2011) ("Here, the government only argued actual

possession, and ample evidence supported that theory, so there is no reason to think the jury based

its conviction on the unsupported theories."); *United States v. Wright*, 329 F. App'x 615, 622 (6th Cir. 2009) (holding that the error, if any, in the district court's decision to instruct the jury on both actual and constructive theories of possession was harmless where government offered sufficient evidence to sustain the defendant's conviction under an actual possession theory); *Hughes*, 134 F. App'x at 77 ("Here, the focus of the government's proof throughout the trial was on whether Hughes had actual possession of the ammunition. There is no reason to believe that the jury convicted Hughes based on the alternative theory of constructive possession because there is no evidence on the record to support that charge. Accordingly, the district court's constructive possession instruction is harmless as a matter of law."); *cf. United States v. Douglas*, 371 F. App'x 562, 565-66 (6th Cir. 2010) (holding that the district court did not commit plain error in giving a jury instruction on both actual and constructive possession where the constructive possession instruction was supported by evidence that defendant was in close proximity to a pistol when police detectives entered the house pursuant to a search warrant).

In these decisions, we have followed the principle set forth in *United States v. Griffin*, 502 U.S. 46 (1991), that "if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." *Id.* at 60; *see also Smith*, 419 F. App'x at 620-21; *Wright*, 329 F. App'x at 622; *Hughes*, 134 F. App'x at 77.

In the instant case, the government conceded that the facts did not support a conclusion that Lawhorn actually possessed the firearms and ammunition. However, even if the district court's actual possession instruction was erroneous because it had no evidentiary basis, the error was harmless. As in the cases cited above, Lawhorn has presented no evidence that the actual possession instruction affected the jury's verdict. Lawhorn's reliance on this court's pre-*Griffin* decision in *James* is therefore misplaced. *See James*, 819 F.2d at 674-76 (holding that the district court's extraneous constructive possession instruction constituted error requiring reversal where there was no evidence of constructive possession, the defendant disputed the officers' testimony regarding his possession of the firearm, and the jury indicated that it was having difficulty resolving the contradictory testimony).

IV.

Lawhorn also contends that there was insufficient evidence of constructive possession to support his conviction, but we disagree. We review de novo the district court's denial of Lawhorn's motion for judgment of acquittal. *United States v. Kelsor*, 665 F.3d 684, 691 (6th Cir. 2011). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (citation and internal quotation marks omitted). "We will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Campbell*, 549

F.3d 364, 374 (6th Cir. 2008). "When engaged in this analysis, we are bound to make all reasonable inferences and credibility choices in support of the verdict." *Id*.

The offense of being a felon in possession of a firearm under 18 U.S.C. § 922(g) consists of three elements: "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *Id.* Lawhorn challenges only the possession element.

"Constructive possession is established when a defendant knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Kelsor*, 665 F.3d at 691 (citation and internal quotation marks omitted). "Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998) (citation and internal quotation marks omitted). "However, '[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control[.]'" *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009) (quoting *United States v. Birmley*, 529 F.3d 103, 107-08 (6th Cir. 1976)). The government must, at a minimum, "present evidence to show some connection or nexus between the defendant and the firearm, which can be established by a showing that the defendant had knowledge and access . . . [to the] firearm." *Id*. (citation, internal quotation marks, and emphasis omitted).

The evidence introduced at Lawhorn's trial established that he resided at and exercised dominion over the house at 1040 Hardesty Boulevard, where the APD officers found the firearm and ammunition. Lawhorn was present at the house, along with his grandmother, when the police arrived

with the search warrant. His Ohio driver's license, which officers found in his pants' pocket, listed 1040 Hardesty Boulevard as his permanent residence, and Lawhorn's mail found on the dining room table was sent to that particular address. The APD officers testified that one of the two bedrooms appeared to be inhabited by an elderly woman; men's clothing, shoes, and personal items were scattered about the other bedroom. A very reasonable inference to be drawn from this evidence is that Lawhorn and his grandmother both lived there. In addition, the officers found the loaded .40 caliber pistol in a box in the garbage can between the house and the garage. Inside the house, they found ammunition in plain view on the television entertainment center in the living room and in the bedroom that contained the men's clothing. This evidence was sufficient for the jury to conclude that Lawhorn had knowledge of, and dominion over, the pistol and ammunition. *See Bailey*, 553 F.3d at 945.

Lawhorn emphasizes the lack of forensic evidence, such as DNA or latent fingerprints, tying him to the firearm and ammunition. However, there is no requirement that such direct evidence is essential to prove possession. To the contrary, a defendant's presence, plus other incriminating circumstantial evidence, may "tip the scale in favor of sufficiency." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007). *See also United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010) (holding that there was sufficient evidence of the defendant's constructive possession of guns and drugs, where the evidence showed that the defendant was present at the house on the day the guns and drugs were found there, he had unlimited access to the house and lived there part time, and bags of marijuana were found with the defendant's driver's license and other personal papers in the

house's only bedroom); *United States v. Tyus*, 379 F. App'x 450, 452 (6th Cir. 2010) (holding that "[a]mple evidence" established that the defendant constructively possessed guns and drugs found inside a house, where the police had observed the defendant at the house on two prior occasions, he was sleeping on the couch when the officers arrived to execute a search warrant, and mail scattered throughout the house was addressed to no one but the defendant and nowhere but that particular address). Here, viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Lawhorn constructively possessed the firearm and ammunition.

V.

For the foregoing reasons, we affirm the judgment of the district court.